Dear Ms. Simmons:
You have requested an opinion of the Attorney General, in your capacity as coordinator of the Beauregard Parish Communication District (District), concerning the District's budget authority.
You state that the District was created in 1992. The Beauregard Parish (Parish) Police Jury (Police Jury) appointed the District's Board of Directors (Board) and, subsequent thereto, the voters of the Parish approved an Enhanced 911 Service (Service) pursuant to R.S. 33:9106.
The Board has controlled the operations of the District, with the exception of the District's budget, which has been implemented through the Parish. At its last meeting, the Board discussed the possibility of assuming control of its own budget. You specifically ask whether the District possesses the legal authority to administer its own budget.
In answer to your question, we refer you to R.S. 33:9101, et seq. Section 9101(A)(3) creates the District as a "political subdivision of the state, with power to sue and be sued in its corporate name and to incur debt and issue bonds . . ."
 Section 9103 further states, in pertinent part:
 § 9103. Board of commissioners; membership; qualifications and terms; powers; parish governing authority as district governing authority
 A.(1)(a) When any district is created wholly within a single parish, the parish governing authority creating it may appoint a board of commissioners composed of seven members to govern its affairs and shall fix the domicile of the board at any point within the parish.
 * * *
 B. The commission shall have complete and sole authority to appoint a chairman and any other officers it may deem necessary from among the membership of the commission.
 C. A majority of the commission membership shall constitute a quorum and all official action of the commission shall require a quorum.
 D. The commission shall have authority to employ such employees, experts, and consultants as it may deem necessary to assist the commission in the discharge of its responsibilities to the extent that funds are made available. (Emphasis added.)
Funding for the District is provided for in Section 9106 which provides, in pertinent part, the following:
 § 9106. Funding; definitions; emergency telephone service charge
 A. As used in this Section, the following words and terms shall have the following meanings, unless the context clearly indicates otherwise:
 * * *
 (7) "Fund the district" means pay the expenses necessary to carry out all purposes of the district, including but not limited to identification of all streets, roads, highways, and dwelling places in the district pursuant to R.S. 33:9102 and R.S. 33:9106(D).
 B.(1)(a) The governing authority of the district may, when so authorized by a vote of a majority of the persons voting within the district in accordance with law, levy an emergency telephone service charge in an amount not to exceed five percent of the tariff rate; however, if a district is serviced by more than one service supplier, then the emergency telephone service charge shall not exceed five percent of the highest tariff rate. The district governing authority may, upon its own initiative, call such a special election. Any such service charge shall have uniform application and shall be imposed throughout the entirety of the district to the greatest extent possible in conformity with availability of such service in any area of the district.
 * * *
 (2) If the proceeds generated by an emergency telephone service charge exceed the amount of monies necessary to fund the district, the district governing authority shall, by ordinance, reduce the service charge rate to an amount adequate to fund the district. In lieu of reducing the service charge rate, the district governing authority may suspend such service charge, if the revenues generated therefrom exceed the amount of monies necessary to fund the district. The district governing authority may, by ordinance, reestablish the original emergency telephone service charge rate or lift the suspension thereof, if the amount of monies generated is not adequate to fund the district.
 * * *
 C. In order to provide additional funding for the district, the governing authority may receive federal, state, parish or municipal funds, as well as funds from private sources, and may expend such funds for the purposes of this Chapter.
As can be gleaned from the above, the District constitutes a political subdivision of the State. It is authorized to employ personnel, including experts and consultants, necessary to discharge its duties. It may levy a voter-approved service charge and/or receive additional funds from federal, state, parish, municipal and private sources.
A review of the statutes establishing the District reveals no prohibition against the District's administering its own budget. To the contrary, it is empowered to do all things necessary to govern its affairs. This office has previously held that a communication district should (1) obtain general liability insurance — Opinion No. 93-262 and (2) publish the official minutes of its meetings and financial reports in an official journal — Opinion No. 93-262.
Based on the above, it is the opinion of this office that the District is authorized to adopt its own budget and administer the funding it receives in accordance therewith. In adopting and implementing its budget, the District must comply with the Louisiana Local Government Budget Act (Act) found at R.S.39:1301, et seq. Questions relating to the Act may be directed to the Office of the Legislative Auditor at (225)-339-3800.
In the event the District receives funding from the Parish, you may wish to make your budget document available to the Parish.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/sfj